McBRIDE, Judge.
This proceeding is brought by plaintiff, Salvadore Piazza, the tenant of 3725 Orleans Street, against Charles Zimmermann, the owner of the premises and the landlord of plaintiff. The petition alleges that defendant exacted from Piazza a rental of $55 a month during the period November 16, 1949, through January 15, 1950; that the maximum rental, as fixed. by the Housing and Rent Control authorities, was $17 per month; and that, therefore, for the two-month period he was overcharged $76. He seeks to recover from defendant treble the overcharge, or $228, plus a reasonable attorney’s fee, as authorized by the Housing and Rent Act of 1947, as amended.
Section 205 of the act, 50 U.S.C.A.Appendix, § 1895, provides as follows: • “Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment (or shall be. liable to the United States as hereinafter provided), for reasonable attorney’s fees and costs as determined by, the court, plus liquidated damages in the amount of (1) $50, or (2) three times the .amount by which the payment or payments demanded, accepted, or received exceed the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount: Provided, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation: * *
Defendant filed several exceptions to the suit, all of which were overruled by the court below. The exceptions are not seriously reurged before us, and we perceive no merit in them and find no error in the ruling of the lower court.
The defendant, after denying that there was any overcharge, avers that if he did collect any amount in excess of the maximum rental, the overplus amounted to only $35, and that as he collected the same in good faith, he is not amenable to the penalties prescribed by the act, but is liable to plaintiff for the overcharge only.
Plaintiff recovered judgment in the lower court for $76, the amount of the overcharge as found by the court, plus a $25 attorney’s fee. Plaintiff has appealed, and defendant has answered the appeal, praying that the judgment be reduced to the principal sum of $35, without an attorney’s fee, and that the costs of both courts be assessed against plaintiff-appellant, for the reason that he made no amicable demand upon defendant before instituting his suit.
As might be expected in cases of this kind, there is conflict in the testimony of the parties and their respective witnesses.
Zimmermann purchased the property involved here, which is a double dwelling, in November of 1948, and at the time he acquired it the property needed extensive repairs. He claims that he paid a total of $6,000 for the property. At the time, one of the dwelling units was' *493 vacant, and the other side, which 'was later rented to Piazza, was occupied by a tenant, who was the predecessor of-Piázza. The former tenant remained in the house only a short time after Zim-mermann bought it, ■ removing therefrom within a few- days or at most a few weeks thereafter. After the removal of this tenant, defendant proceeded to have repairs made to the property, the work starting in December of 1948 and ending about January, 1950, and the testimony shows that the repairs cost Zimmermann about $4,000.
As the good faith of the landlord is in ■question, we deem it proper to state in some detail the circumstances leading up ±0 the leasing of the house. Piazza was married in April, 1949, and he and his wife were living in his father-in-law’s home, which was located a short distance from the property in question. Piazza, in the summer of 1949, approached Zimmer-mann and asked if Zimmermann would rent the house to him. Zimmermann replied ‘ that he would be willing to do so when the repairs were completed. About two weeks later, Piazza again saw Zim-mermann, and the latter told Piazza that the repairs were not completed, but that he expected their completion in about another two weeks. After waiting for said period, Piazza contacted Zimmermann, and learned that the repairs had still not been completed. Apparently, Piazza saw Zim-mermann several times after that, but Zim-mermann always informed him that the re-, pairs were unfinished. At any rate, the work was completed in January, 1950.
In regard to the visits which Piazza made to Zimmermann, the testimony of the parties is diametrically opposed. The former states that he -saw Zimmermann ■only casually when he went to the latter’s place; of business for service to his trucks, while Zimmermann claims that Piazza came to see him on numerous occasions importuning him on each visit to rent the house to him, but that he told Piazza he would not do so until such time as the work being done to the house was finished.
In November, 1949, the repairs had reached such a state that the 3725 side of the house was habitable, arid Piazza moved some of his furniture in on November 16, 1949. About two days later, he moved the remainder of his furniture into the house, and hé-and his wife commenced to occupy it.
As to the fixing of the monthly rental, the testimony of the parties also conflicts. Zimmermarin’s story is that he told Piazza that- in view of the amount of the repairs he had made - to the house, he expected to get between $50 and $60 per month as rent, but that before he could fix the exact amount he would have the Housing and Rent Director to establish the maximum rental. Zimmermann claims that Piazza offered to pay $55 a month, and suggested that there be a written lease. Piazza’s version is that Zimmermann at no time ever mentioned to him anything about what amount he would be required to pay each month, until the morning of November 16, 1949, when he moved some of his furniture into the house. At that time, he says, Zimmermann handed him a two-year lease stipulating for $55 rent, and requested him to sign it, Zimmermann telling him that the Rent Director had fixed that figure as the ceiling rent. Piazza stated that at first he demurred, but because of the fact that he- had purchased furniture, and the furniture was in the process of being delivered to him, he reluctantly signed the lease.
Zimmermann admits that 'he did not visit the Housing and Rent Office, and that the $55 monthly rent stipulated for in the lease was never fixed by the Rent Director.. He testified that the former tenant, who occupied the property when he bought it in 1948, having remained in the place -only for a short space of time, had never paid any rent to him, and that he .did not know that there had ever been a formal fixing of the maximum rent.
Piazza states that he did not believe that the ceiling rent had been established at $55, and on January 10, 1950, he proceeded to the Office of the Housing Expediter and filed with that official a petition requesting that the maximum rental on the unit be reduced. It was then discovered that the maximum rental was $17, and the Expe *494 diter evidently communicated with Zim-mermann about the matter, for we find that Zimmermann filed an answer to Piazza’s petition, in which he contended that in view of the extensive and costly repairs he should be allowed to collect $55 each month from the unit.
Ultimately, on January 20, 1950, the Area Rent Director issued an order increasing the' maximum rent from $17 to $37.50 per month effective as of January 10, 1950.
Section 205 of the act, above quoted, provides that the amount of the damages shall' be for the amount of the overcharge only, if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. The only thing in the case for us to decide then, is whether'Zimmermann acted in bad faith.
If we accept as the truth Piazza’s statement that Zimmermann represented to him that’ the rental stipulated for in the lease was the established maximum rental, nevertheless we do not believe that of itself is sufficient to brand Zimmermann with bad faith. He states that he at no time knew of the original $17 maximum, as he had never collected rent from the former tenant. Zimmermann believed that the price which he paid for the house, and the extensive repairs which went into the house after his purchase of it, warranted the premises bringing $55 each month, his investment having amounted to $10,000.
We believe that Zimmermann spoke the truth when he stated that he did not know that there was an original maximum rental of $17 a month, as he had never collected rent from the former tenant. He states that he believed, in view of the purchase price of the property, and the large amount of repairs which went into it, that he was justified in charging between $50 and $60 a month. His investment in the house amounted to about $10,000, and there is some justification for his belief' as to how much rent he should be allowed to collect:
 It is true that Zimmermann could have gone to the Rent Office and ascertained if there had been a formal fixing of the rent ceiling, but because he neglected to. do so, we do not believe that his violation of the regulation should subject him to multiple damages. The violation, it seems to us, was more of a technical nature. We believe that the word “willfully” was intended to mean ..that the landlord’s conduct must be intentional,. as distinguished from accidental, or conduct marked by careless disregard of its rightfulness. See People, on Complaint of Weber v. Keane, 181 Misc. 592, 47 N.Y.S.2d 347. We are unwilling, under the circumstances, to hold that he acted in bad faith, and in this conclusion we are bolstered by the findings of the lower court.. The judge below had the benefit of hearing and seeing the witnesses testify, and-he concluded that there was no bad faith on Zimmermann’s part, and the record convincingly bears out that conclusion.
Our Supreme Court, in Succession of Herber, 117 La. 239, 41 So. 559, 560, quoted what had been said in Hicks v. Martin, 9 Mart., O.S., 47, decided in 1820: “ * * * it is * * * one of .the first principles of justice not to presume that a person has acted illegally, * *
However, the defendant is liable for the overcharge, and for a reasonable fee to plaintiff’s attorney. The order increasing the rent to $37.50 per month, according to its terms, is effective from January 10, 1950, and, therefore, Zimmermann, for two months collected a total overcharge of $76.00.
Defendant’s counsel admits that there was an overcharge, but argues that it amounted to only $35.00, contending that the circumstances of the case warrant our holding that the order of the Area Rent Director should be retroactive'to the date of the lease,, and the overcharge 'for each of the two months could only be the difference between $55, the amount collected, and $37.50, the newly established maximum.
 We have no power or authority to disturb in any way the order of the Rent Director, nor to change or broaden its terms, as counsel would have us do. The order cannot be questioned in these proceedings, because jurisdiction to ascertain the validity or correctness, of the order is *495 vested solely in the Emergency Court of Appeals- at Washington, D. C. ' This has been repeatedly held. See Sheffield v. Jefferson Parish Developers, 216 La. 1055, 45 So.2d 621, and Beets v. Peters, 29 So.2d 611, and cases therein cited.
The amount of $25 which was awarded to plaintiff’s attorney as his fee, in our opinion, is inadequate. The record discloses that counsel performed his duties diligently, zealously, and with dispatch. It is true that, as compared with the award to plaintiff, at first glance the fee of $25 would seem to be adequate compensation for counsel’s service. But, -other considerations, of necessity, also should enter into the determination of the amount of the attorney’s fee, such as, the time consumed in handling the case, the industry of counsel, and the manner in which the case had been conducted. Bonnelucq v. Bernard, La.App., 41 So.2d 88. We think that a fee of $50 to plaintiff’s counsel would be proper in this case.
 The parties argue extensively as to who should bear the costs of this proceeding. Appellee assumes the position that whereas no amicable demand 'had been made by plaintiff before the institution of the suit, all costs should be paid by plaintiff. Amicable demand was not averred in the petition, but defendant answered the suit, and went to trial on the. merits of the case, without-offering to comply with plaintiff’s demands. An amicable demand-is not necessary previous to bringing a suit, and the want of such demand may be taken advantage of by way of exception timely filed, but such plea can only save costs where the defendant shows a readiness to comply with plaintiff’s demands. Porter v. Town of Ville Platte, 158 La. 342, 104 So. 67.
R.S. 13.4444 vests us with authority to tax the costs of this suit, or any part thereof, against any party to the suit, as we, in our judgment, may deem equitable. We believe that the circumstances of the case warrant the taxing of the costs of the lower court against defendant, and that the plaintiff should pay the costs of this court.
For the reasons assigned, the judgment appealed from is amended, so as to increase the amount of the féé of plaintiff’s attorney from' $25 tó $50, and as thus amended, and in all other respect's, it is affirmed. The cost of this appeal is to be paid by plaintiff-appellant. •
Amended and affirmed.
REGAN, J., takes no part.